**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EPCOR Water Arizona Incorporated, et al., | No. CV-20-08045-PCT-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Tom Brady, et al., | |
| Defendants. | |

At issue are two interrelated motions: (1) a motion for a preliminary injunction filed by Plaintiffs EPCOR Water Arizona Incorporated ("EPCOR") and Chad Gebow[1] (Doc. 3), and (2) a motion to dismiss or, in the alternative, to abstain or defer filed by Defendant City of Bullhead City, Arizona ("the City") (Doc. 50). These motions are fully briefed, and the Court heard consolidated oral arguments on June 30, 2020 (Doc. 77). For the following reasons, the Court dismisses EPCOR's amended complaint for failure to state a plausible claim to relief and denies as moot EPCOR's motion for a preliminary injunction.

**I. Factual Background**[2]

EPCOR owns the water system that services the City and its residents. (Doc. 18 ¶ 4.) In July 2019, the City voted to refer Proposition 415 to the November 5, 2019 ballot

---

[1] For ease, the Court will refer to Plaintiffs solely as EPCOR.
[2] The following facts are derived principally from EPCOR's amended complaint (Doc. 18) and presumed true for purposes of this order. *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004). Some undisputed expositional information is derived from other filings in this case.

for the purposes of assuming the debt and obtaining authorization to acquire EPCOR's water system. (¶ 20.) Leading up to the election, the City contracted with a firm to value EPCOR's water system and to develop and deploy a communication plan to encourage the passage of Proposition 415. (¶ 23.) The City also advocated for Proposition 415 through press releases, social media (such as Facebook and YouTube), mailers to the electorate (including communications on sewage bills), and billboards located on City property. (¶¶ 25, 26.) EPCOR claims that some of the information conveyed by the City was "misleading" or "slanted." (¶ 26.)

On July 24, 2019, Taxpayers Against City Takeovers ("TACT")—an EPCOR-affiliated political action committee—wrote a letter to the Arizona Attorney General ("AG") complaining that the City was utilizing public resources to advocate for the passage of Proposition 415 in violation of A.R.S. § 9-500.14 and Bullhead City Code § 2.76.060 (collectively, "anti-electioneering laws"). (Doc. 18-1 at 26-30, 74.) Section 9-500.14 in relevant part states that "[a] city or town shall not spend or use its resources . . . for the purpose of influencing the outcomes of elections," and authorizes the AG to initiate a suit in the appropriate superior court to enforce compliance. Section 2.76.060 prohibits, with some exceptions, City employees from "engaging in any political activity relating to any city council election[.]" The July 24 letter asked the AG to investigate the claims and file suit to enjoin the City's "impermissible electioneering[.]" (*Id.* at 30.) TACT sent another letter to the AG in August 2019 supplementing its allegations. (*Id.* at 80-82.)

On election day, voters approved Proposition 415 by a margin of 79 votes out of a total of 9,519 cast. (Doc. 18 ¶ 28.) Months later, on February 18, 2020, the AG sent a letter to the City regarding TACT's complaint. (Doc. 18-1 at 23-24.) According to the letter, the AG "reviewed the information provided" and "concluded that the use of local billboards to display electioneering messages in favor of Proposition 415 violated A.R.S. § 9-500.14." (*Id.* at 23.) Specifically, the AG concluded that two messages related to Proposition 415—"Our City, Our Water, Our Rates," and "Local Control = Local Benefit"—appeared on three billboards "pursuant to the City's agreement with the

billboard owners for daily advertising time as compensation for billboard placement on City property." (*Id.* at 24.) The AG's letter did not take issue with any of the other perceived acts of electioneering about which TACT had complained.

The City later calendared a March 3, 2020 public meeting to discuss, among other matters, "possible action" to implement Proposition 415 "including the immediate issuance of an offer to purchase, and any negotiations as may be necessary, to consummate a purchase price for just compensation." (Doc. 18-1 at 95-97.) On March 2, 2020, EPCOR filed this action and sought a temporary restraining order ("TRO") to preclude the City from moving forward with Proposition 415's implementation. (Docs. 1, 3.) The following day, the Court denied EPCOR's TRO application, noting concerns about the merits and finding that EPCOR would not be irreparably harmed by the City holding a meeting. (Doc. 13.)

The City proceeded with its scheduled meeting, during which it voted to move forward with the implementation of Proposition 415 by acquiring EPCOR's water system through eminent domain. (Doc. 50-1 at 45.) As an initial step in this process, the City offered EPCOR $55 million as just compensation. (Doc. 31-1 at 2.) After EPCOR rejected this offer, the City filed a condemnation action in Mohave County Superior Court seeking immediate possession of EPCOR's water system. (Doc. 31 at 2.) This prompted EPCOR to renew its application for a TRO before this Court. (*Id.*) The Court declined to enter a TRO, however, because the Mohave County Superior Court's scheduling order provided an adequate window of time for this Court to resolve EPCOR's preliminary injunction motion and the City's related motion to dismiss without the need for an interim order preserving the status quo. (Doc. 45.) The parties subsequently briefed and argued the pending motions.

**II.  Legal Standard**

Because the City filed an answer to EPCOR's amended complaint (Doc. 39), its motion to dismiss must be treated as a motion for judgment on pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See Elvig*, 375 F.3d at 954. The distinction is

academic because "Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and . . . 'the same standard of review' applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). A motion for judgment on the pleadings cannot be granted if the complaint is based on a cognizable legal theory and contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted); *see also Fajardo v. Cty. of L.A.*, 179 F.3d 698, 699 (9th Cir. 1999) (explaining that a motion for judgment on the pleadings "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law").

**III. Discussion**

EPCOR's amended complaint is divided into four counts but alleges only two substantive claims. These claims are reflected in Counts I and II and allege violations of 42 U.S.C. § 1983, which creates a cause of action against any person who, under color of state law, deprives another of any rights, privileges, or immunities secured by the United States Constitution or federal law. Here, EPCOR claims that the City deprived it of its Fourteenth Amendment rights to (1) a fundamentally fair election and (2) to due process before the taking of its property. (Doc. 18 ¶¶ 31-47.) Counts III and IV are not independent claims; they are requests for specific forms of relief for the claims alleged in Counts I and II. Count III asks for declaratory relief (an order declaring that the November 5, 2019 election was "not duly held" and is "invalid and without legal force"), and Count IV asks for injunctive relief (an order enjoining the City from moving forward with the condemnation of EPCOR's water system and "annul[ing] and void[ing]" Proposition 415). (¶¶ 48-67.)

The City argues principally that the amended complaint must be dismissed because EPCOR's allegations, accepted as true, do not rise to the level of a Fourteenth Amendment

violation.³ The Court agrees with the City's principal contention and therefore does not address the City's myriad alternative arguments related to standing, laches, and abstention.

EPCOR's claims are derivative of perceived violations of Arizona law. EPCOR claims that the November 5, 2019 election was fundamentally unfair and, consequently, that any resulting taking of its property would be without due process, because EPCOR believes the City's messaging violated anti-electioneering laws.⁴ But Section 1983 is a method for vindicating *federal* rights, not rights secured by state law. *See Graham v. Connor*, 490 U.S. 386, 393-94 (1989). "[A]n alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution." *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1349 (7th Cir. 1985) (cited favorably by the Ninth Circuit in *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir. 1990).) The City therefore does not violate § 1983 solely by running afoul of state and local anti-electioneering laws. EPCOR must show that the rights encompassed in those laws also are guaranteed by the Constitution.

---

³ The City argues that the insufficiency of EPCOR's amended complaint creates a jurisdictional defect. In the City's view, because EPCOR has not plausibly alleged a Fourteenth Amendment violation, there is no federal claim over which this Court may exercise subject-matter jurisdiction. This latter argument is misguided. The Court has subject-matter jurisdiction over § 1983 actions, even weak or implausible ones. That EPCOR has not stated plausible § 1983 claims means that its amended complaint must be dismissed for failure to state claim, not that this Court lacks subject-matter jurisdiction to evaluate the claims in the first place.

⁴ During oral argument, EPCOR attempted to reframe its claims as wholly independent of Arizona law. EPCOR went so far as to argue that, even if Arizona had no anti-electioneering laws, the November 5, 2019 election still would have been fundamentally unfair and subject to invalidation. EPCOR's representations contradict its amended complaint, which controls. (*See* Doc. 18 ¶¶ 1, 21, 25, 27-29, 38, 44, 49-56, and subsections a and b of the prayer for relief section on page 11.) These representations also contradict EPCOR's explanation for waiting until March of this year to file this lawsuit. EPCOR asserts that it did not file a pre-election lawsuit (even though it knew the essential facts underlying its claims months before the election) because it was awaiting a determination from the AG regarding TACT's electioneering complaints, which EPCOR viewed as an important predicate to this action. (*See, e.g.*, Doc. 33 at 6; Doc. 59 at 8.) If EPCOR's claims are dependent on violations of state law, then its decision to await the AG's determination, though not necessarily reasonable, is at least coherent. But the position EPCOR advanced at oral argument makes that decision nonsensical. TACT's complaint and the AG's determination were based solely on violations of Arizona law, so there is no plausible way in which the AG's determination could serve as an important predicate to an action that in no way depends on violations of Arizona law. The Court therefore assesses EPCOR's claims as they have been alleged in the amended complaint, not as they were recast during oral argument.

EPCOR has not cited and the Court has found no authority standing for the proposition that the Constitution specifically proscribes the conduct that Arizona and the City have *chosen* to regulate through their anti-electioneering laws. Instead, EPCOR appeals to a more general right to due process guaranteed by the Fourteenth Amendment. A state or local election violates due process if it is "conducted in a manner that is fundamentally unfair." *Bennett v. Yoshina*, 140 F.3d 1218, 1226 (9th Cir. 1998). When determining whether an election is fundamentally unfair, courts distinguish between "'garden variety' election irregularities and a pervasive error that undermines the integrity of the vote." *Id.* "In general, garden variety election irregularities do not violate the Due Process Clause, *even if they control the outcome of the vote or election.*" *Id.* (emphasis added.) Rather, "a court will strike down an election on substantive due process grounds if two elements are present: (1) likely reliance by voters on an established election procedure and/or official pronouncements about what the procedure will be in the coming election; and (2) significant disenfranchisement that results from a change in the election procedures." *Id.* at 1226-27.

EPCOR's allegations, even accepted as true, do not meet this demanding standard. EPCOR does not allege that the City changed an established election procedure upon which voters had come to rely, resulting in significant disenfranchisement. It merely complains that the City used public resources to convey messages favorable to Proposition 415 and posits that some voters might have been persuaded to vote for the ballot measure as a result. This is more akin to a garden variety election irregularity than to the sorts of pervasive errors that courts have found problematic under the Fourteenth Amendment. Indeed, the cases EPCOR relies on concern election malfeasance incomparable to conduct at issue here. *See Marks v. Stinson,* 19 F.3d 873 (3d Cir. 1994) (illegal coordination between candidate and election board to solicit and process absentee ballots); *Duncan v. Poythress*, 657 F.2d 691 (5th Cir. 1981) (coordinated effort to fill a state judicial vacancy by executive appointment, rather than a constitutionally required special election); *Griffin v. Burns*, 570 F.2d 1065 (1st Cir. 1978) (post-election change to treatment of absentee and shut-in ballots,

resulting in the disenfranchisement of a sizeable percentage of voters); *Smith v Cherry*, 489 F.2d 1098 (7th Cir. 1973) (conspiracy to run a sham primary candidate who would drop out of the general election race, paving way for a replacement candidate designated outside the electoral process); *Acosta v. Democratic City Committee*, 288 F. Supp. 3d 597 (E.D. Penn. 2018) (concerted campaign of voter intimidation and voting equipment tampering); *Krieger v. City of Peoria,* No. CV-14-01762-PHX-DGC, 2014 WL. 4187500 (D. Ariz. Aug. 22, 2014) (candidate's name omitted from ballot). Accordingly, EPCOR's amended complaint fails to state a plausible due process violation premised on the fundamental fairness of the November 5, 2019 election.

From there, EPCOR's deprivation of property claim logically fails as well. There is no federal constitutional right to be free from eminent domain; there is only the right to just compensation for the taking. Issues surrounding the compensation to which EPCOR is entitled are being litigated in Mohave County Superior Court through the City's condemnation action. EPCOR alleges that any taking of its water system would violate due process because the November 5, 2019 election results are invalid due to the City's violation of anti-electioneering laws. But, for reasons just discussed, this Court cannot invalidate a state or local election unless that election was carried out in a fundamentally unfair way, and EPCOR's allegations do not meet this standard. Therefore,

**IT IS ORDERED** that the City's motion for judgment on the pleadings (Doc. 50) is **GRANTED** and EPCOR's motion for a preliminary injunction (Doc. 3) is **DENIED** as

/ / /
/ / /
/ / /
/ / /
/ / /

moot.[5]  The Clerk of the Court is directed to enter judgment of dismissal and terminate this case.

Dated this 10th day of August, 2020.

Douglas L. Rayes
United States District Judge

---

[5] Even if EPCOR's complaint were not subject to outright dismissal, the Court would deny its motion for a preliminary injunction because EPCOR is not likely to succeed on the merits of its claims for reasons discussed in this order (if the claims are not implausible, they are at least weak).  Moreover, the public has an interest in the finality of election results, and the City has acted in reliance on those results.  Had EPCOR filed a pre-election lawsuit, a court could have afforded timely relief.  But EPCOR's decision to wait until months after the election shifts the balance against preliminary injunctive relief, especially when that relief would involve the invalidation of an election and the enjoining of a parallel state court proceeding.